UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RACING OPTICS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> AEVOE CORP., ) <br> ) <br> Defendant. ) <br> ) | 2:15-cv-01774-RCJ-VCF <br><br> **ORDER** |

This case arises out of competing patents for lens-protection technology.  Pending before the Court is a Motion for Judgment on the Pleadings (ECF No. 66).  The Court denies the motion.

## I.    FACTS AND PROCEDURAL HISTORY

Since 1999, Plaintiff Racing Optics, Inc., through its founders Stephen, Bart, and Seth Wilson (collectively, "the Inventors"), has developed and delivered lens-protection systems, including "tear-off" protectors for high-speed racing consisting of stacks of optically engineered laminated lenses applied to race car windshields, motorcycle goggles, and racing helmet visors. (Compl. ¶ 2, ECF No. 1).  Once damaged, the top layer of the lens can be torn off to reveal a new, undamaged layer, providing a clear view. (*Id.*).  The technology is also used in the medical, military, consumer, and industrial fields. (*Id.* ¶ 3).  Most importantly here, Racing Optics

developed a "bubble-free" screen protector that avoids difficult-to-remove air bubbles created
when applying conventional screen protectors by eliminating the full adhesive in the central area
of the screen and spacing the protector away from the screen with an "air bearing." (*Id.* ¶ 5).

Racing Optics filed U.S. Patent Application No. 12/780,443 for the bubble-free screen
protector technology, titled "Touch Screen Shield," on May 14, 2010. (*Id.* ¶ 6).  In mid-2012,
after the '443 Application had been published but while it was still pending, Defendant Aevoe
Corp.'s President and Executive Director Jon Lin contacted Racing Optics and informed it that
Aevoe was the assignee of U.S. Patent No. 8,044,942 for a bubble-free screen protector invented
by Lin. (*Id.* ¶ 6–8).  The '942 Patent claimed priority to a January 18, 2011 provisional
application. (*Id.* ¶ 8).  By 2013, Aevoe had filed five patent infringement actions based on the
'942 Patent, including three in this District presided over by Chief Judge Navarro. (*Id.* ¶ 8 &
n.1).  On March 15, 2013, Racing Optics filed a divisional application of the still-pending '443
Application, U.S. Patent Application No. 13/838,311, also titled "Touch Screen Shield." (*See*
U.S. Patent No. 8,974,620, at [21, 22, 62], ECF No. 1-3).  On January 16, 2015, Racing Optics
filed a continuation application of the still-pending '311 Application (itself a divisional
application of the still-pending '443 Application), U.S. Patent Application No. 14/599,176, also
titled "Touch Screen Shield." (*See* U.S. Patent No. 9,104,256, at [21, 22, 60], ECF No. 1-2).  The
'311 Application issued as the '620 Patent on March 10, 2015.  The '176 Application issued as
the '256 Patent on August 11, 2015.  The '443 Application issued as the '545 Patent on
September 8, 2015.

In summary, Racing Optics is the assignee of U.S. Patents No. 8,974,620; 9,104,256; and
9,128,545 (collectively, "the Patents"), which issued on March 10, 2015; August 11, 2015; and
September 8, 2015, respectively. (*Id.* ¶¶ 23–28).  Racing Optics sued Aevoe in this Court for

direct, contributory, and inducement infringement of claims 12, 14–16, and 18–20 of the '545 Patent; claims 1–4, 6–7, 9–17, and 19–23 of the '256 Patent; and claims 1–11 and 13–14 of the '620 Patent via the production, use, offer for sale, and/or importation into the United States of screen protectors for electronic devices, including the iVisor AG, iVisor XT, and iVisor Glass (collectively, "the Accused Products"). (*Id.* ¶¶ 30, 42, 53). Aevoe answered and filed counterclaims for non-infringement, invalidity, and unenforceability due to fraud upon or inequitable conduct before the Patent Office. Racing Optics amended to add a claim of infringement of U.S. Patent No. 9,274,625, which issued on March 1, 2016. Aevoe has moved for judgment on the pleadings against the claim for infringement of the '620 Patent. The Court now addresses that motion.

## II.   LEGAL STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standards governing a Rule 12(c) motion are the same as those governing a Rule 12(b)(6) motion. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference . . . is the time of filing. . . . [T]he motions are functionally identical . . . .").

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for

1   failure to state a claim, dismissal is appropriate only when the complaint does not give the

2   defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

3   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

4   sufficient to state a claim, the court will take all material allegations as true and construe them in

5   the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

6   Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

7   conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

8   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

9   with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own

10  case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79

11  (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff

12  pleads factual content that allows the court to draw the reasonable inference that the defendant is

13  liable for the misconduct alleged.").  In other words, under the modern interpretation of Rule

14  8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but

15  also must plead the facts of his own case so that the court can determine whether the plaintiff has

16  any plausible basis for relief under the legal theory he has specified or implied, assuming the

17  facts are as he alleges (*Twombly-Iqbal* review).

18          "Generally, a district court may not consider any material beyond the pleadings in ruling

19  on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

20  complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

21  *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

22  whose contents are alleged in a complaint and whose authenticity no party questions, but which

23  are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

24

motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### III.   ANALYSIS

Aevoe argues that Racing Optics abandoned the '620 Patent by failing to comply with statutory oath requirements.  The parties appear to agree that the '620 Patent issued from the '311 Application, which was filed on March 15, 2013.  They also appear to agree that: (1) the '311 Application included a pre-AIA-compliant inventor's oath; (2) on May 3, 2013, the Patent Office issued Racing Optics a notice indicating that an AIA-compliant inventor's oath would be required; (3) on April 2, 2015, after the '620 Patent had issued on March 10, 2015, Racing Optics petitioned the Patent Office for late acceptance of an AIA-compliant inventor's oath, arguing that the failure to previously submit an AIA-compliant oath had been inadvertent, unintentional, and with no deceptive intent; and (4) on October 13, 2015, the Patent Office granted the petition in part, noting that it would enter the corrected oath into the file and that the file "speaks for itself," but declining to issue any statement as to the abandonment issue for lack of jurisdiction because the '620 Patent had been granted.  Aevoe argues that the '620 Patent (or the '311 Application) was abandoned as a matter of law when Racing Optics failed to submit the AIA-compliant inventor's oath before paying the issue fee, notwithstanding the Patent Office's grant of the petition for late filing.

**A.      Abandonment under the Rules of the Patent Office**

It is important to distinguish between abandonment under pre-AIA § 102(c) or other statutes and abandonment of an application under the Patent Office's internal rules of practice:

> Once an application is deemed abandoned under the rules of practice of the Patent Office, the inventor loses the benefit of the filing date of that application for the purpose of applying the statutory bar provisions of Section 102(b), but the inventor may file a new application with a new filing date and still obtain a patent if no statutory bar has occurred and the circumstances as a whole do not indicate abandonment of the right to a patent under § 102(c).

2 Donald S. Chisum, *Chisum on Patents* § 6.03[2], at 6-315 to 6-316 (2015) (footnotes omitted). Here, it is clear that the Patent Office has made no determination of the abandonment issue under its own rules of practice and refuses to make any such determination for lack of jurisdiction. Anyway, the Patent Office's compliance with its own internal procedures is not before the Court. As Racing Optics correctly notes, "the examiner's or the applicant's absolute compliance with the internal rules of patent examination becomes irrelevant after the patent has issued." *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 960 (Fed. Cir. 1997).  The Court need only examine whether the invention or the '311 Application was abandoned as a matter of law under pre-AIA § 102(c) or other applicable statutes.

**B.      Statutory Abandonment**

**1.      § 102(c)**

Aevoe notes that the AIA amendments to 35 U.S.C. § 102 went into effect on March 17, 2015 and argues that pre-AIA § 102(c) therefore governs the '620 Patent because the '311 Application that resulted in the '620 Patent was filed on March 15, 2013.  That appears to be correct:

///

///

(n) EFFECTIVE DATE.—

(1)  IN  GENERAL.—Except  as  otherwise  provided  in  this  section,  the amendments made by this section shall take effect upon the expiration of the 18-month period beginning on the date of the enactment of this Act, and shall apply to any application for patent, and to any patent issuing thereon, that contains or contained at any time—

(A) a claim to a claimed invention that has an effective filing date as defined in section 100(i) of title 35, United States Code, that is on or after the effective date described in this paragraph; or

(B) a specific reference under section 120, 121, or 365(c) of title 35, United States Code, to any patent or application that contains or contained at any time such a claim.

Leahy–Smith America Invents Act, Pub. L. No. 112-29, § 3(n), 125 Stat. 284, 293 (2011).  The

AIA was signed into law by President Obama on September 16, 2011.  Eighteen months later

was March 16, 2013.  Racing Optics does not argue to the contrary.

The pre-AIA abandonment statute read, "A person shall be entitled to a patent

unless . . . he has abandoned the invention." Pub. L. No. 82-593, §102(c), 66 Stat, 792, 797

(1952).  The concept of abandonment had been developed in the law before its 1952 codification,

most famously in the case of *Mason v. Hepburn*, 13 App. D.C. 86 (D.C. Cir. 1898).  In that

appeal of a Patent Office ruling in an interference proceeding between two competing patents,

the court ruled that Mason had abandoned his invention of a rifle magazine when he stored it for

seven years without using it and only applied for a patent when he learned that a competitor,

Hepburn, had independently invented a similar magazine and applied for his own patent. 3A

Donald S. Chisum, *Chisum on Patents* § 10.08[2], at 10-327 (2012).  The *Mason* court ruled that

Mason had abandoned the invention in the sense of pre-AIA § 102(g), under which a later

invention is not anticipated by a prior invention if the prior inventor has abandoned, suppressed,

or concealed the prior invention.  In other words, Hepburn's right to a patent was not foreclosed

by Mason's earlier invention because Mason had abandoned, suppressed, or concealed his own invention in the meantime.  The *Mason* court first ruled, however, that Mason had not abandoned his invention in the sense of pre-AIA § 102(c). *See Mason*, 13 App. D.C. at 96 (distinguishing pre-AIA § 102(c)-type abandonment from pre-AIA § 102(g)-type abandonment) ("Strictly speaking, abandonment after the completion of the inventive act applies in a case where the right of the public to the use is involved [pre-AIA §102(c)-type abandonment], and not in one where the contention is between rival claimants merely of the monopoly [pre-AIA §102(g)-type abandonment]."); *id.* at 91 (citing *Bates v. Coe*, 98 U.S. 31, 46 (1878)) ("The public did not and was not intended to receive any benefit from it during the seven years that intervened between the construction and the application for the patent.  Not having been given or abandoned to public use, there was nothing in the mere lapse of time to prevent Mason receiving a patent."). In other words, a person only abandons an invention in the sense of pre-AIA § 102(c) by abandoning it to public use.

Here, there is no allegation or evidence that Racing Optics ever did or failed to do anything indicating an intention to abandon the invention(s) in the '620 Patent in the sense of pre-AIA § 102(c).  Aevoe argues Racing Optics abandoned the '311 Application under pre-AIA § 102(c) on February 6, 2015 when it paid the issue fee before submitting an AIA-compliant inventor's oath, because the inventor's oath was due on or before that date. *See* 35 U.S.C. § 115(f) (2013).  According to Aevoe, paying the issue fee without having filed the oath that was statutorily due on or before payment indicates Racing Optics's intention to abandon the invention.  But mere failure to supply a required oath cannot be said to indicate an intention to abandon an invention to public use under pre-AIA § 102(c) without more.  Here, Racing Optics paid the issue fee contemporaneously with this alleged act of abandonment, and paying an issue

fee (like the other myriad acts Racing Optics took in furtherance of obtaining the '620 Patent both before and after paying the issue fee) indicates an intention to obtain a patent and thereby exclude the public from using the invention, not an intention to abandon the invention to public use. *See Mason*, 13 App. D.C. at 91.  Mere negligence only results in abandonment where the negligence is in failing to apply for a patent at all until one notices similar products in the market. *See Consol. Fruit-Jar Co. v. Wright*, 94 U.S. 92, 95–96 (1876) (affirming the district court's invalidation of John L. Mason's 1870 patent for Mason jars, because he had abandoned the invention to the public by selling some jars in 1859 and failing to apply for a patent until 1868, long after similar jars had appeared in the market).  The present case is entirely dissimilar. The only alleged neglect here was a failure to comply with a technical statutory requirement of the application—a failure the statute itself excused in any case, *see infra*—not a failure to pursue an application until after the invention was abandoned to public use.  There is no evidence at all of abandonment to public use here, which Defendant must prove by clear and convincing evidence in order to overcome the statutory presumption of validity. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015) (citing 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245–47 (2011)).  Racing Optics did not abandon the invention under pre-AIA § 102(c).

### 2.   § 115(f)

Still, § 115(f) required the oath to be filed no later than the date the issue fee was paid. The question is whether Congress intended such a failure to invalidate any patent that nevertheless issues.  Congress has answered the question by providing a "savings clause" directly under § 115 that delineates when such a failure will not result in invalidity or unenforceability:

(h) Supplemental and corrected statements; filing additional statements.--

(1) In general.--Any person making a statement required under this section may withdraw, *replace, or otherwise correct the statement **at any time**.*  If a change is made in the naming of the inventor requiring the filing of 1 or more additional statements under this section, the Director shall establish regulations under which such additional statements may be filed.

. . . .

(3) Savings clause.--A patent shall not be invalid or unenforceable based upon the failure to comply with a requirement under this section if the failure is remedied as provided under paragraph (1).

*Id.* § 115(h), (h)(1), (h)(3) (emphases added).  This version of § 115 was effective as of September 16, 2012, and it therefore applies to the '311 Application filed on March 15, 2013.  *See* Leahy–Smith America Invents Act, Pub. L. No. 112-29, § 4(e), 125 Stat. 284, 297 (2011).  The savings clause permits an applicant to "replace" or "otherwise correct" a statement governed by the section "at any time."  The Court finds that correction of a previously submitted oath to comply with AIA standards fits comfortably within the savings clause.  An AIA-compliant oath is a "correct[ion]" of a pre-AIA-compliant oath.  "[A]ny" time means the time for filing a correction is without limitation, so the savings clause permits corrected oaths to be filed either before or after the issue fee is paid.

**3.    § 111(a)(4)**

Aevoe argues that the failure was not properly remedied, however, because the savings clause of § 115(h) applies only to "this section," i.e., § 115, and it cannot have cured a separate infirmity under § 111.  Specifically, "Upon failure to submit the fee and oath or declaration within such prescribed period, the application shall be regarded as abandoned, unless it is shown to the satisfaction of the Director that the delay in submitting the fee and oath or declaration was unavoidable or unintentional." *Id.* § 111(a)(4) (1994).

But the Court finds that § 111 incorporates § 115's savings clause.  The "oath" referred to in § 111(a)(4) is the "oath or declaration *as prescribed by section 115*." *Id.* § 111(a)(2)(C) (emphasis added).  The provision for replacement and corrected oaths "at any time" under § 115(h) is part of the "oath . . . prescribed" and "prescribed period" referred to in § 111(a)(2)(C) and (a)(4).  To construe § 111 not to incorporate §115's savings clause would be to read § 115's savings clause out of the statute and thereby ignore part of Congress's definition of the prescribed period for submitting oaths, which includes replacements and corrections made "at any time."

C.      The Administrative Procedures Act ("APA")

Aevoe's argument that the issuance of the '620 Patent violated the APA because it was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law is frivolous.  The Court of Appeals has squarely ruled that Patent Office actions are not subject to challenge under the APA due to the comprehensive legislative scheme providing for various forms of review under Title 35. *See Pregis Corp. v. Kappos*, 700 F.3d 1348, 1357–61 (Fed. Cir. 2012).

CONCLUSION

IT IS HEREBY ORDERED that the Motion for Judgment on the Pleadings (ECF No. 66) is DENIED.

IT IS SO ORDERED.

Dated this 2nd day of August, 2016.

_____
ROBERT C. JONES
United States District Judge